## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION<br>100 F Street, N.E.<br>Washington, DC 20549, | : |
| Plaintiff, | : |
| vs. | :    Civil No. |
| ONE OR MORE UNKNOWN TRADERS<br>IN THE COMMON STOCK OF CERTAIN<br>ISSUERS, | : |
| Defendants, | : |
| and | : |
| JSC PAREX BANK, | : |
| Relief Defendant. | : |

### COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff the United States Securities and Exchange Commission ("Commission")
alleges:

### SUMMARY

1.      This action stems from a modern-day, technological version of the
traditional "pump-and-dump" market manipulation scheme. From at least December
2005 through December 2006, the defendants engaged in a scheme to fraudulently use
the Internet to intrude into the online brokerage accounts of unsuspecting customers at
U.S. broker dealers and place unauthorized trades in the accounts for the defendants' own

pecuniary benefit. The scheme worked like this. First, the defendants purchased in their own accounts shares of stock in a thinly traded company. Shortly thereafter, the defendants, directly or indirectly, intruded into the online brokerage accounts of investors at U.S. broker-dealers, liquidated existing equity positions and, using the resulting proceeds, purchased and sold thousands, and in one instance millions, of shares of the same thinly traded stocks purchased by the defendants in their own accounts. The unauthorized trading in the third-party accounts created the appearance of trading activity and pumped up the price of the stocks. Then, at the height of the price surge, the defendants sold in their own accounts their previously-purchased shares of the same stocks at the inflated prices.

2.      In perpetrating their scheme, the defendants masked their identities by intruding into the online accounts using the Internet Protocol addresses of innocent third parties and by trading anonymously through the domestic brokerage accounts of Latvian-based Relief Defendant JSC Parex Bank.

3.      As a result of their fraudulent scheme, the defendants realized profits totaling at least $732,941 from trading in their accounts. In addition, the broker-dealers whose customers' accounts were compromised suffered in excess of $2 million in losses in their efforts to make their customers whole. All of the defendants' ill-gotten proceeds are held in domestic accounts titled in the name of Relief Defendant JSC Parex Bank.

4.      By virtue of their conduct, the defendants have engaged, and unless enjoined will continue to engage, in violations of Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)] and Section 10(b) of the Securities

Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5

promulgated thereunder [17 C.F.R. § 240.10b-5].

## JURISDICTION AND VENUE

5.      The Commission brings this action, and this Court has jurisdiction over

this action, pursuant to authority conferred by Sections 20(b), 20(d) and 22(a) of the

Securities Act [15 U.S.C. §§ 77t(b), 77t(a) and 77v(a)] and Sections 21(d), 21(e) and 27

of the Exchange Act [15 U.S.C. §§ 78u(d), 77u(e) and 78aa].

6.      This Court has personal jurisdiction over the defendants and venue is

proper in the District of Columbia pursuant to Section 27 of the Exchange Act [15 U.S.C.

§ 78aa] because some of the transactions, acts, practices, and courses of business

constituting the violations alleged herein occurred within this District.  In addition, at

least one of the victims whose accounts were illegally accessed by the defendants resides

within this District.

7.      The defendants, directly and indirectly, have made use of the means and

instrumentalities of interstate commerce, and the means and instruments of transportation

and communication in interstate commerce, in connection with the transactions, acts,

practices, and courses of business alleged in this Complaint.

## DEFENDANTS

8.      The defendants (hereinafter "Unknown Trader Defendants") are one or

more individuals or entities whose identities and addresses are unknown to the

Commission at this time because each anonymously traded in securities through one or

more brokerage accounts titled in the name of JSC Parex Bank.  Between December 2005

and December 2006, the Unknown Trader Defendants purchased and sold, or caused to

be purchased and sold, shares of the common stock of fifteen issuers, each of which was

the subject of unauthorized trading in compromised accounts of customers at various U.S.

broker-dealers on the same days that the Unknown Trader Defendants traded the stocks.

### RELIEF DEFENDANT

9.      JSC Parex Bank ("Parex") is a foreign entity whose address is 3 Smilshu

Street, Riga, Latvia, LV-1522.  Its registered agent for domestic service of process is CT

Corporation Systems, 111 8th Avenue, 13th Floor, New York, NY 10011.  Parex

maintains an omnibus trading account, with seventy-five (75) sub-accounts titled in the

name of JSC Parex Bank, at Pinnacle Capital Markets, LLC ("Pinnacle"), a North

Carolina-based registered broker-dealer.

### FACTS

### Background

10.     Parex opened an omnibus brokerage account at Pinnacle in June 2002.

Since then, and until as recently as December 2006, Parex has opened a total of seventy-

five (75) sub-accounts all titled in Parex's corporate name.  According to account

opening documents, there are a total of twenty (20) beneficial owners of the omnibus

account, all residents of Russia, Latvia, Lithuania or the British Virgin Islands.  The

documents do not, however, identify the individual owners of the sub-accounts.

Moreover, according to the account opening documents, the sub-accounts shall not be

treated as separate accounts for any purpose except to separate securities into separate

groups for the convenience of the customer to view the sub-accounts.  The Corporate

Account Agreement executed on behalf of Parex list the bank's president, vice president

and chairman of the board as the individuals authorized to open accounts and trade in the

omnibus account and the sub-accounts. Parex appears is routinely commingling funds between its omnibus account and its sub-accounts.

11.     Parex allows its customers to access their accounts online via the website www.parex.lv by entering a username and password directly onto the website. Once logged in, customers can access their Parex accounts and request that trades be placed in the Parex accounts at Pinnacle for stocks and options traded via a number of foreign exchanges, including major U.S. exchanges and markets such as the New York Stock Exchange and the National Association of Securities Dealers Automated Quotation ("Nasdaq") Service. Parex charges its customers a commission for trades executed in their Parex accounts.

### The Unknown Trader Defendants' Account Intrusion Scheme

12.     Between December 21, 2005, and December 4, 2006, the Unknown Trader Defendants, using a number of sub-accounts at Pinnacle titled in the name of Relief Defendant Parex, traded in issuers whose share prices were manipulated through online intrusions and unauthorized trading in investors' accounts at E*Trade Securities, LLC ("E*Trade"), Scottrade, Inc. ("Scottrade"), TD Ameritrade, Inc. ("TD Ameritrade"), Vanguard Brokerage Services ("Vanguard"), Fidelity Investments ("Fidelity"), Merrill Lynch & Co., Inc. ("Merrill Lynch") and Charles Schwab & Co., Inc. ("Schwab").

13.     In each of these instances, the trading pattern was the same. First, the Unknown Trader Defendants accumulated in their own accounts at Pinnacle a position in a thinly traded issuer. Next, a series of unauthorized electronic intrusions involving that issuer occurred at one or more broker-dealers whereby the intruders liquidated existing positions in the accounts and used the resulting proceeds to buy thousands of shares of

the same thinly-traded stocks previously purchased by the Unknown Trader Defendants in their own account. Then, at the height of the pump, the Unknown Trader Defendants sold their shares at the inflated prices for a profit.

14.    The online broker-dealers whose customer accounts were hijacked and used by the Unknown Trader Defendants to effectuate the unauthorized trades suffered losses in excess of $2 million in their efforts to make their customers whole. In addition, the Unknown Trader Defendants' manipulative trading caused damage to market participants who purchased at the inflated prices the stocks of the following fifteen companies that were subject to intrusions: Remote Dynamics, Inc., DepoMed, Inc., Orchid Cellmark, Inc., Repligen Corp., Dura Automotive Systems, Inc., Valentis, Inc., WTS Dime Bankcorp., Inc., Bluefly, Inc., Netwolves Corp., Netguru, Inc., Integrated Alarm Services Group, Inc., I-Many, Inc., Tapestry Pharmaceuticals, Inc., Onvia, Inc. and BriteSmile, Inc.

## Remote Dynamics, Inc.

15.    Remote Dynamics, Inc. is a Richardson, Texas-based purported developer and owner of mobile resource management technologies. Until February 21, 2006, the company traded on the Nasdaq Capital Market under the ticker symbol REDI. On February 9, 2006, REDI was the subject of online intrusions at TD Ameritrade, Scottrade and E*Trade. On that day, REDI opened at $.29 per share and increased to an intra-day and 52-week high of $1.10 per share on volume of 3,943,257 shares compared to its prior 15-day historical average trading volume of 132,882 shares.

16.    In the days leading up to the intrusions, from February 3, 2006, until February 8, 2006, the Unknown Trader Defendants accumulated in their own

accounts 580,240 shares of REDI at prices ranging from $.24 to $.29 per share, and sold 68,040 shares at $.23 to $.25 per share.

17.     On February 9, 2006, from 12:29 p.m. to 12:51 p.m., one or more of the Unknown Trader Defendants intruded into an account at TD Ameritrade and placed orders to buy 243,900 shares of REDI.[1]  Similarly, from 12:22 p.m. to 1:21 p.m., the Unknown Trader Defendants intruded into two Scottrade accounts and purchased a total of 241,000 shares of REDI.  Also on February 9, from 1:35 p.m. to 2:05 p.m., one or more of the Unknown Trader Defendants intruded into an E*Trade account and placed orders to purchase 215,000 shares of REDI.  At 2:08 p.m., the intruders placed an order to sell these 215,000 shares at market prices.

18.     Concurrently with the intrusions, on February 9, 2006, between 2:38 p.m. and 3:06 p.m., the Unknown Trader Defendants sold their 512,200 REDI shares, as well an additional 9,800 shares they previously purchased in their accounts, at prices ranging from $.36 to $.54 per share.

19.     As a result of their scheme to manipulate the price of REDI, the Unknown Trader Defendants realized a profit of at least $75,720.

### DepoMed, Inc.

20.     DepoMed, Inc. is a Menlo Park, California-based company that purports to develop proprietary oral drug delivery technologies.  The company trades on the Nasdaq Global Market under the symbol DEPO.  On December 4, 2006, REDI was the subject of online intrusions at TD Ameritrade, Scottrade,

---

[1]  All times set forth herein are in the Eastern Time Zone.

Fidelity and Schwab. On that day, DEPO opened at $3.62 per share and increased

to an intra-day high of $3.79 per share on volume of 2,356,336 shares, compared

to its prior 15-day historical average trading volume of 347,627 shares.

21.    Prior to the intrusions, on December 1, 2006, the Unknown Trader

Defendants bought in their own accounts 389,461 shares of DEPO at prices

ranging from $3.35 to $3.75 per share, and sold 2,739 shares at $3.37 to $3.41 per

share.

22.    On December 4, 2006, between 1:27 p.m. and 2:21 p.m., one or

more of the Unknown Trader Defendants intruded into five accounts at TD

Ameritrade and purchased a total of 246,600 shares of DEPO stock. During this

period, the intruders also sold 119,400 shares of DEPO in two of the accounts.

Similarly, from 1:27 p.m. to 1:57 p.m. on December 4, the Unknown Trader

Defendants intruded into two Scottrade accounts and purchased 7,050 shares of

DEPO. Between 1:27 p.m. and 2:20 p.m., the Unknown Trader Defendants

intruded into four accounts at Fidelity, purchased 59,200 shares in two of the

accounts and attempted to purchase another 11,000 shares in the other two

accounts. Finally, between 1:27 p.m. and 2:19 p.m., the Unknown Trader

Defendants intruded into five accounts at Schwab and purchased 163,100 shares

of DEPO. The intruders also attempted to purchase another 34,500 shares in the

accounts but the orders were cancelled by Schwab prior to execution.

23.    At the height of the price surge, on December 4, 2006, between

2:40 p.m. and 3:44 p.m., the Unknown Trader Defendants sold 251,254 shares of

DEPO in their own accounts at prices ranging from $3.17 per share to $3.99 per share.

24.      As a result of their scheme to manipulate the price of DEPO, the Unknown Trader Defendants realized a profit of at least $51,078.

### Orchid Cellmark, Inc.

25.      Orchid Cellmark, Inc. is a Princeton, New Jersey based company that purports to offer human and agricultural DNA testing services. The company trades on the Nasdaq Global Market under the symbol ORCH. On November 15, 2006, ORCH was the subject of online intrusions at TD Ameritrade, Scottrade and Schwab. That day, ORCH opened at $3.65 per share and climbed to an intra-day high of $4.08 per share on volume of 1,153,767 shares, compared to its prior 15-day historical average of 138,179 shares.

26.      Prior to the intrusions, on November 14, 2006, the Unknown Trader Defendants bought 157,466 shares of ORCH in their own accounts at prices ranging from $3.25 to $3.70 per share.

27.      On November 15, 2006, between 11:01 a.m. and 12:17 p.m., one or more of the Unknown Trader Defendants intruded into an account at Schwab and purchased 171,000 shares of ORCH. Also on November 15, from 11:07 a.m. to 12:02 p.m., the Unknown Trader Defendants intruded into two accounts at TD Ameritrade and purchased 12,500 of ORCH. From 11:02 a.m. until 12:35 p.m., the Unknown Trader Defendants intruded into two accounts at Scottrade and purchased 5,000 shares of ORCH.

28.    Concurrently with the intrusions, on November 15, between 12:10 p.m. and 1:52 p.m., the Unknown Trader Defendants sold all 157,466 of their ORCH shares in their own accounts at prices ranging from $3.51 to $4.06 per share.

29.    As a result of their scheme to manipulate the price of ORCH, the Unknown Trader Defendants realized a profit of approximately $55,783.

**Repligen Corp.**

30.    Repligen Corp. is a Waltham, Massachusetts entity that purports to develop new drugs for autism, organ transplantation and cancer. The company trades on the Nasdaq Global Market under the symbol RGEN. On October 2, 2006, RGEN was the subject of online intrusions at TD Ameritrade, Scottrade, E*Trade, Fidelity and Schwab. On that day, RGEN opened at $3.40 per share and increased to an intra-day high of $4.17 per share on volume of 1,264,748 shares, compared to its prior 15-day historical average trading volume of 52,456 shares.

31.    Prior to the intrusions, from September 28, 2006, to October 2, 2006, the Unknown Trader Defendants purchased in their own accounts 41,720 shares of RGEN at prices ranging from $3.05 to $3.24 per share.

32.    On October 2, 2006, between 11:52 a.m. and 12:28 p.m., one or more of the Unknown Trader Defendants intruded into two accounts at TD Ameritrade and bought 207,500 shares of RGEN. From 11:55 a.m. to 12:45 p.m., the Unknown Trader Defendants intruded into an account at E*Trade and placed orders to buy 12,800 shares of RGEN. Similarly, at 11:52 a.m., the Unknown Trader Defendants intruded into a Scottrade account and purchased 2,000 shares

of RGEN. Moments later, 11:59 a.m., one or more of the Unknown Trader Defendants intruded into an account at Fidelity and purchased 2,000 shares. Likewise, between 11:52 a.m. and 12:37 p.m., one of more of the Unknown Trader Defendants intruded into three accounts at Schwab and bought 124,500 RGEN shares. The intruders also attempted to purchase an additional 108,000 shares in the accounts, but the orders were cancelled by Schwab prior to execution.

33.    Concurrently with the intrusions, on October 2, 2006, between 1:05 p.m. and 1:50 p.m., the Unknown Trader Defendants sold in their own accounts all 41,720 of their RGEN shares at prices ranging from $3.65 to $4.00 per share.

34.    As a result of their scheme to manipulate the price of RGEN, the Unknown Trader Defendants realized a profit of approximately $28,057.

**Dura Automotive Systems, Inc.**

35.    Dura Automotive Systems, Inc. is a Rochester Hills, Michigan entity purportedly engaged in the design and manufacture of automobile industry systems. Until November 8, 2006, the company traded on the Nasdaq Global Market under the symbol DRRA. On August 28, 2006, DRRA was the subject of online intrusions at TD Ameritrade, Scottrade, E*Trade and Schwab. That day, DRRA opened at $.54 per share and increased to an intra-day high of $.66 per share on volume of 4,759,599 shares, compared to its prior 15-day historical average trading volume of 495,289 shares.

36.    Prior to the intrusions, from August 15, 2006 until August 28, 2006, the Unknown Trader Defendants accumulated in their own accounts 355,500 shares of DRRA at prices ranging from $.39 to $.45 per share.

37.    On August 28, from 12:42 p.m. to 3:39 p.m., one or more of the Unknown Trader Defendants intruded into an account at TD Ameritrade, purchased 363,500 shares of DRRA, and sold 363,500 shares. That same day, between 11:41 a.m. until 12:41 p.m., the Unknown Trader Defendants intruded into four accounts at Scottrade and purchased 337,000 shares of DRRA. Almost simultaneously, between 11:41 a.m. and 1:50 p.m., one of more of the Unknown Trader Defendants intruded into two E*Trade accounts and purchased 231,000 shares of DRRA. Between 2:33 p.m. and 2:50 p.m., the Unknown Trader Defendants intruded into a Schwab account and purchased 30,000 shares of DRRA. They also attempted to purchase another 25,000 shares in the account, but those orders were cancelled by Schwab prior to execution.

38.    Concurrently with the intrusions, on August 28, 2006, between 1:06 p.m. and 2:33 p.m., the Unknown Trader Defendants sold their 355,500 DRRA shares in their own accounts at prices ranging from $.58 to $.61 per share.

39.    As a result of their scheme to manipulate the price of DRRA, the Unknown Trader Defendants realized a profit of approximately $51,511.

**Valentis, Inc.**

40.    Valentis, Inc. is a Burlingame, California-based purported biotechnology company trading on the Nasdaq Capital Market under the symbol VLTS. On July 28, 2006, VLTS was the subject of unauthorized intrusions at

Scottrade, TD Ameritrade, E*Trade and Schwab.  On that day, VLTS opened at
$.65 per share and increased to an intra-day high of $.67 per share on volume of
3,723,383 shares, compared to its prior 15-day historical average trading volume
of 1,704,102 shares.

      41.     Prior to the intrusions, between July 25, 2006 and July 27, 2006,
the Unknown Trader Defendants accumulated in their own accounts 446,977
shares of VLTS at prices ranging from $.34 to $.44 per share, and sold 3,267
shares at $.35 to $.40 per share.

      42.     On July 28, between 9:58 a.m. and 1:01 p.m., one of more of the
Unknown Trader Defendants intruded into a TD Ameritrade account and
purchased 696,999 shares of VLTS.  Between 11:28 a.m. and 11:55 a.m., the
Unknown Trader Defendants intruded into an account at Scottrade and purchased
53,500 shares of VLTS.  Also on July 28, from 11:41 a.m. to 1:04 p.m., the
Unknown Trader Defendants intruded into two accounts at E*Trade and
purchased 240,699 shares of VLTS.  Finally, between 12:13 p.m. and 12:17 p.m.,
one of more of the Unknown Trader Defendants intruded into an account at
Schwab and purchased 35,000 shares of VLTS.

      43.     Contemporaneously with the intrusions, on July 28, 2006, between
11:03 a.m. and 11:05 a.m., the Unknown Trader Defendants bought an additional
210 shares of VLTS in their own accounts at $.61 to $.63 per share and, beginning
at 12:43 p.m., sold all 443,920 of their VLTS shares at prices ranging from $.53 to
$.67 per share.

44.    As a result of their scheme to manipulate the price of VLTS, the Unknown Trader Defendants realized a profit of at least $92,541.

### WTS Dime Bancorp, Inc.

45.    WTS Dime Bancorp, Inc. is a bankrupt New York based company whose shares trade as litigation tracking warrants. The company trades on the Nasdaq Global Market under the symbol DIMEZ. On July 6, 2006, DIMEZ was the subject of unauthorized intrusions at Scottrade and Vanguard. On that day, DIMEZ opened at $.25 per share and increased to an intra-day high of $.30 per share on volume of 14,791,078 shares, compared to its prior 15-day historical average trading volume of 292,982 shares.

46.    Prior to the intrusions, between June 21, 2006 and July 6, 2006 at 12:29 p.m., the Unknown Trader Defendants accumulated 897,000 shares of DIMEZ in their own accounts at prices ranging from $.16 to $.29 per share, and sold 5,500 shares at $.21 to $.28 per share.

47.    On July 6, between 11:57 a.m. and 12:46 p.m., one of more of the Unknown Trader Defendants intruded into two accounts at Scottrade and purchased 946,500 shares of DIMEZ. Also on July 6, between 11:35 a.m. and 1:40 p.m., one of more of the Unknown Trader Defendants intruded into a Vanguard account and purchased 2,802,838 shares of DIMEZ.

48.    Contemporaneously with the intrusions, on July 6, 2006, beginning at 1:11 p.m., the Unknown Trader Defendants sold in their own accounts their remaining 891,500 shares of DIMEZ at prices ranging from $.17 to $.30 per share.

49.    As a result of their scheme to manipulate the price of DIMEZ, the Unknown Trader Defendants realized a profit of approximately $60,378.

## Bluefly, Inc.

50.    Bluefly, Inc. purports to be a New York-based Internet retailer of apparel, accessories and home furnishings. The company trades on the Nasdaq Capital Market under the symbol BFLY. On May 17, 2006, BFLY was the subject of unauthorized intrusions at E*Trade. On that day, BFLY opened at $0.72 per share and rose to a high of $1.01 per share on volume of 1,535,886 shares, compared to its prior 15-day historical average trading volume of 204,771 shares.

51.    On May 17, 2006, between 2:41 p.m. and 3:02 p.m., the Unknown Trader Defendants purchased in their own accounts 121,000 shares of BFLY at prices ranging from $.81 to $.99 per share.

52.    Simultaneously with their purchases, on May 17, 2006, between 1:37 p.m. and 2:36 p.m., one or more of the Unknown Trader Defendants intruded into an E*Trade account and purchased 132,680 shares of BFLY.

53.    Then, after the intrusions began, and at the height of the resulting price surge on May 17, 2006, between 3:28 p.m. and 3:36 p.m., the Unknown Trader Defendants sold their 121,000 BFLY shares in their own accounts at prices ranging from $.97 to $.99 per share.

54.    As a result of their scheme to manipulate the price of BFLY, the Unknown Trader Defendants realized a profit of approximately $6,843.

## NetWolves Corp.

55.    NetWolves Corp. is a Tampa, Florida-based company that purports to produce software and hardware technologies. Until May 16, 2006, the company traded on the Nasdaq Capital Market under the symbol WOLV. On April 13, 2006, WOLV was

the subject of online intrusions at E*Trade, Scottrade and Fidelity. On that day, WOLV

opened at $.35 per share and increased to an intra-day and 52-week high of $.49 per share

on volume of 5,703,476 shares, compared to its 15-day average trading volume of

371,619 shares.

56. Prior to the intrusions, from March 28, 2006 until April 13, 2006 at 12:22

p.m., the Unknown Trader Defendants accumulated in their own accounts 909,700 shares

in WOLV at prices ranging from $.27 to $.38 per share.

57. On April 13, between 12:19 p.m. and 2:33 p.m., one or more of the

Unknown Trader Defendants intruded into seven accounts at E*Trade and purchased

1,267,130 shares of WOLV. From 12:26 pm. until 1:10 p.m., the Unknown Trader

Defendants intruded into two accounts at Scottrade and purchased a total of 55,300 shares

of WOLV. In addition, between 12:28 p.m. and 12:58 p.m., one or more of the Unknown

Trader Defendants intruded into a Fidelity account and purchased 350,300 shares of

WOLV.

58. Contemporaneously with the intrusions, on April 13, 2006, between 10:58

a.m. and 1:22 p.m., the Unknown Trader Defendants bought an additional 800 shares of

WOLV in their own accounts at prices ranging from $.37 to $.38 per share. Then,

between 1:50 p.m. and 4:31 p.m., they sold all 910,500 shares in their accounts at prices

ranging from $.31 to $.49 per share.

59. As a result of their scheme to manipulate the price of WOLV, the

Unknown Trader Defendants realized a profit of approximately $93,523.

## Netguru, Inc.

60.    Netguru, Inc. is a Yorba Linda, California entity that purports to be an integrated Internet technology and services company. Until December 15, 2006, the company traded on the Nasdaq Capital Market under the symbol NGRU. On March 24, 2006, NGRU was the subject of online intrusions at TD Ameritrade. On that day, NGRU opened at $.62 per share and increased to an intra-day high of $.97 per share on volume of 6,270,864 shares, compared to its prior 15-day historical average trading volume of 848,233 shares.

61.    Prior to the intrusions, between March 13, 2006 and March 24, 2006 at 9:31 a.m., the Unknown Trader Defendants accumulated in their own accounts 445,650 shares of NGRU at $.41 to $.62 per share.

62.    Beginning approximately one hour later, on March 24, 2006, between 1:27 p.m. and 3:44 p.m., one or more of the Unknown Trader Defendants intruded into two accounts at TD Ameritrade and purchased 1,062,000 and sold 694,800 shares of NGRU.

63.    Contemporaneously with the intrusions, on March 24, 2006, beginning at 3:18 p.m., the Unknown Trader Defendants sold all 445,650 of their NGRU shares in their accounts at prices ranging from $.79 to $.94 per share.

64.    As a result of their scheme to manipulate the price of NGRU, the Unknown Trader Defendants realized a profit of approximately $165,468.

## Integrated Alarm Services Group, Inc.

65.    Integrated Alarm Services Group, Inc. is an Albany, New York-based purported supplier of services to independent security alarm dealers. The company trades on the Nasdaq Global Market under the symbol IASG. On February 17, 2006, IASG was

the subject of online intrusions at Merrill Lynch and TD Ameritrade. On that day, IASG opened at $3.50 per share and increased to an intra-day high of $4.27 per share on volume of 827,513 shares, compared to its prior 15-day historical average trading volume of 115,914 shares.

66.     From February 3, 2006, until February 17, 2006 at 1:21 p.m., the Unknown Trader Defendants accumulated in their own accounts 63,300 shares of IASG at prices ranging from $2.88 to $3.67 per share.

67.     On February 17, 2006, between 11:50 a.m. and 3:15 p.m., one or more of the Unknown Trader Defendants intruded into an account at Merrill Lynch and purchased 26,900 shares of IASG. Additionally, between 1:22 p.m. and 2:00 p.m., the Unknown Trader Defendants intruded into an account at TD Ameritrade, purchased 234,890 shares of IASG and sold 67,324 shares in the account.

68.     Contemporaneously with the intrusions, on February 17, 2006, between 2:48 p.m. and 2:57 p.m., the Unknown Trader Defendants sold their 63,300 IASG shares in their own accounts at prices ranging from $3.66 to $3.98 per share.

69.     As a result of their scheme to manipulate the price of IASG, the Unknown Trader Defendants realized a profit of approximately $5,067.

**I-Many, Inc.**

70.     I-Many, Inc. is an Edison, New Jersey-based purported provider of Internet Solutions and related professional services. The company trades on the Nasdaq Global Market under the symbol IMNY. On March 8, 2006, IMNY was the subject of online intrusions at Scottrade, Merrill Lynch, TD Ameritrade and Schwab. On that day, IMNY opened at $1.81 per share and increased to an intra-day high of $2.08 per share on

volume of 1,767,826 shares, compared to its prior 15-day historical average trading volume of 148,555 shares.

71.    Between February 17, 2006 and March 8, 2006 at 1:08 p.m., the Unknown Trader Defendants accumulated in their own accounts 107,750 shares of IMNY at prices ranging from $1.55 to $1.84 per share.

72.    On March 8, 2006, between 1:26 p.m. and 2:06 p.m., one or more of the Unknown Trader Defendants intruded into an account at TD Ameritrade and purchased 81,500 shares of IMNY.  Additionally, from 12:43 p.m. to 3:03 p.m., the Unknown Trader Defendants intruded into six Scottrade accounts and purchased a total of 233,300 shares of IMNY.  Between 12:46 p.m. and 2:55 p.m., the Unknown Trader Defendants intruded into two accounts at Merrill Lynch and purchased 117,900 shares of IMNY.  Finally, from 1:19 p.m. to 2:11 p.m., the Unknown Trader Defendants intruded into two Schwab accounts and purchased 118,610 shares of IMNY.

73.    Contemporaneously with the intrusions, on March 8, 2006, beginning at 3:19 p.m., the Unknown Trader Defendants sold their 107,750 shares of IMNY in their accounts at prices ranging from $1.79 to $2.00 per share.

74.    As a result of their scheme to manipulate the price of IMNY, the Unknown Trader Defendants realized a profit of approximately $22,130.

**Tapestry Pharmaceuticals, Inc.**

75.    Tapestry Pharmaceuticals, Inc. is a Colorado company purportedly focused on developing proprietary therapies for cancer treatment.  The company trades on the Nasdaq Capital Market under the symbol TPPH.  On December 21, 2005, TPPH was the subject of online intrusions at Scottrade and TD Ameritrade.  On that day, TPPH

opened at $.34 per share and increased to an inter-day and 52-week high of $.70 per share on volume of 2,614,704 shares, compared to its prior 15-day historical average trading volume of 146,597 shares.

76.    Prior to the intrusions, between December 19, 2005 and December 21, 2005 at 1:42 p.m., the Unknown Trader Defendants accumulated in their own accounts 310,000 shares of TPPH at prices ranging from $.31 to $.43 per share.

77.    On December 21, 2005, between 12:45 p.m. and 2:36 p.m., one or more of the Unknown Trader Defendants intruded into two accounts at TD Ameritrade and purchased 161,600 TPPH shares.  In addition, from 12:45 p.m. to 2:36 p.m., the Unknown Trader Defendants intruded into three accounts at Scottrade and purchased 514,400 shares of TPPH.

78.    Approximately one hour later, on December 21 at 3:49 p.m., the Unknown Trader Defendants sold their 310,000 TPPH shares in their own accounts at $.45 per share.

79.    As a result of their scheme to manipulate the price of TPPH, the Unknown Trader Defendants realized a profit of approximately $25,828.

### Onvia, Inc.

80.    Onvia, Inc. is a Seattle, Washington-based company that purports to operate an online exchange for small businesses.  The company trades on the Nasdaq Global Market under the symbol ONVI.  On December 21, 2005, ONVI was the subject of online intrusions at Merrill Lynch and Schwab.  On that day, ONVI opened at $4.30 per share and increased to an intra-day high of $5.50 per share on volume of 43,313 shares, compared to its prior 15-day historical average trading volume of 9,792 shares.

81.     Prior to the intrusions, on December 20, 2005 at 3:18 p.m., the Unknown Trader Defendants purchased in their own accounts 5,000 shares of ONVI at $4.44 per share.

82.     On December 21, 2005, at 10:15 a.m., one or more of the Unknown Trader Defendants into an account at Merrill Lynch and purchased 24,000 shares of ONVI.

83.     Shortly after the intrusions, on December 21, 2005, at 12:03 p.m., the Unknown Trader Defendants sold in their own accounts their 5,000 ONVI shares at $4.54 per share.

84.     As a result of their scheme to manipulate the price of ONVI, the Unknown Trader Defendants realized a profit of approximately $503.

### BriteSmile, Inc.

85.     BriteSmile, Inc. is a Walnut Creek, California company purportedly engaged in the development, distribution, and marketing of teeth whitening processes. The company trades on the Nasdaq Capital Market under the symbol BSML.  On December 21, 2005, BSML was the subject of online intrusions at Scottrade.  On that day, BSML opened at $.57 per share and increased to an inter-day high of $1.74 per share on volume of 1,163,590 shares, compared to its prior 15-day historical average trading volume of 61,580 shares.

86.     On December 21, 2005, between 3:50 p.m. and 3:56 p.m., the Unknown Trader Defendants purchased in their own accounts 80,000 shares of BSML at prices ranging from $.75 to $.79 per share.

87.    That same day, between 2:42 p.m. and 3:49 p.m., one of more of the Unknown Trader Defendants intruded into two Scottrade accounts and purchased 367,888 shares of BSML.

88.    Contemporaneously with the intrusions, on December 21, 2005, between 4:26 p.m. and 4:49 p.m., the Unknown Trader Defendants sold the BSML shares in their own accounts at prices ranging from $1.04 to $1.35 per share.

89.    As a result of their scheme to manipulate the price of BSML, the Unknown Trader Defendants realized a profit of approximately $36,646.

## CLAIMS FOR RELIEF

### COUNT I

### Violations of Section 17(a) of the Securities Act
### [15 U.S.C. § 77q(a)]

90.    The Commission re-alleges and incorporates by reference paragraphs 1 through 89 above.

91.    As set forth more fully above, the Unknown Trader Defendants, by engaging in the conduct described above, directly or indirectly, in the offer or sale of securities, by the use of means or instruments of transportation or communication in interstate commerce or by the use of the mails:

(a)    negligently employed devices, schemes or artifices to defraud;

(b)    with scienter obtained money or property by means of untrue statements of material fact or by omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

(c)       negligently engaged in transactions, practices or courses of business which operated or would operate as a fraud or deceit upon the purchasers of such securities.

92.       By reason of the foregoing, the Unknown Trader Defendants have violated Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## COUNT II

### Violations of Section 10(b) of the Exchange Act
### [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]

93.       The Commission re-alleges and incorporates by reference paragraphs 1 through 92 above.

94.       As set forth more fully above, the Unknown Trader Defendants, by engaging in the conduct described above, directly or indirectly, in connection with the purchase or sale of securities, by the use of means or instrumentalities of interstate commerce, or of the mails, or of a facility of a national securities exchange, with scienter:

(a)       employed devices, schemes or artifices to defraud;

(b)       made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

(c)       engaged in acts, practices or courses of business which operated or would operate as a fraud or deceit upon other persons.

95.       By reason of the foregoing, the Unknown Trader Defendants have violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## COUNT III

## Claim Against Relief Defendant as Custodian of Investor Funds

96.    The Commission re-alleges and incorporates by reference paragraphs 1 through 95 above.

97.    Relief Defendant JSC Parex Bank received funds and property from one or more of the Unknown Trader Defendants, which are the proceeds, or are traceable to the proceeds, of the unlawful activities of Unknown Trader Defendants, as alleged herein.

98.    Relief Defendant JSC Parex Bank obtained the funds and property alleged above as part of and in furtherance of the securities violations alleged herein and under circumstances in which it is not just, equitable or conscionable for it to retain the funds and property.  As a consequence, the Relief Defendants have been unjustly enriched.

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court enter a judgment that:

### I.

Permanently restrains and enjoins the Unknown Trader Defendants, and each of the Unknown Trader Defendants' agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from future violations of Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5 thereunder;

### II.

Orders the Unknown Trader Defendants to disgorge all monies obtained through the illegal activities described above, plus prejudgment interest thereon, as well as to pay

civil penalties pursuant to Section 20(d) of the Securities Act and Section 21(d) of the

Exchange Act;

**III.**

Enters a final judgment requiring Relief Defendant JSC Parex Bank to disgorge

any and all assets obtained as a result of Unknown Trader Defendants' securities

violations alleged herein; and

**IV.**

Grants such other relief as this Court deems just and proper.


March 6, 2007                                    Respectfully submitted,


                                                Kenneth Guido, Trial Counsel (Bar No. 151605)
                                                John Reed Stark
                                                Thomas A. Sporkin
                                                N. Blair Vietmeyer
                                                Sarit Klein
                                                David Smyth
                                                Attorneys for Plaintiff
                                                U.S. SECURITIES AND EXCHANGE
                                                COMMISSION
                                                100 F Street, N.E.
                                                Washington, DC 20549
                                                (202) 551-4892 (Stark)
                                                (202) 772-9278 (Fax)
                                                Email: starkj@sec.gov

07-431
D
RMU

%JS 44  (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a)  PLAINTIFFS

UNITED STATES SECURITIES AND EXCHANGE COMMISSION

**(b)**  County of Residence of First Listed Plaintiff  **1001**
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)**  Attorney's (Firm Name, Address, and Telephone Number)
US SEC, 100 F STREET, NE, WASHINGTON, DC 20549-4030 (202) 551-4480

## DEFENDANTS

ONE OR MORE UNKNOWN TRADERS IN COMMON STOCK OF CERTAIN ISSUER

County of Residence of First Listed Defendant  **FOREIGN (UNKNOWN)**
(IN U.S. PLAINTIFF CASES ONLY)

CASE NUMBER  1:07CV00431

JUDGE: Ricardo M. Urbana

DECK TYPE: TRO/Preliminary Injunction

DATE STAMP: 03/06/2007

## II.  BASIS OF JURISDICTION    (Place an "X" in One Box Only)

- [X] 1.  U.S. Government Plaintiff
- [ ] 3  Federal Question (U.S. Government Not a Party)
- [ ] 2  U.S. Government Defendant
- [ ] 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP

| | | | |
|---|---|---|---|
| Citizen | | | of Business in This State |
| Citizen of Another State | [ ] 2 | [ ] 2  Incorporated *and* Principal Place of Business in Another State | [ ] 5  [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3  Foreign Nation | [ ] 6  [ ] 6 |

## IV.  NATURE OF SUIT    (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 362 Personal Injury - | [ ] 620 Other Food & Drug | [ ] 423 Withdrawal | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product | Med. Malpractice | [ ] 625 Drug Related Seizure | 28 USC 157 | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | Liability | [ ] 365 Personal Injury - | of Property 21 USC 881 | | [ ] 450 Commerce |
| [ ] 150 Recovery of Overpayment | [ ] 320 Assault, Libel & | Product Liability | [ ] 630 Liquor Laws | **PROPERTY RIGHTS** | [ ] 460 Deportation |
| & Enforcement of Judgment | Slander | [ ] 368 Asbestos Personal | [ ] 640 R.R. & Truck | [ ] 820 Copyrights | [ ] 470 Racketeer Influenced and |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers' | Injury Product | [ ] 650 Airline Regs. | [ ] 830 Patent | Corrupt Organizations |
| [ ] 152 Recovery of Defaulted | Liability | Liability | [ ] 660 Occupational | [ ] 840 Trademark | [ ] 480 Consumer Credit |
| Student Loans | [ ] 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | [ ] 490 Cable/Sat TV |
| (Excl. Veterans) | [ ] 345 Marine Product | [ ] 370 Other Fraud | [ ] 690 Other | | [ ] 810 Selective Service |
| [ ] 153 Recovery of Overpayment | Liability | [ ] 371 Truth in Lending | | **SOCIAL SECURITY** | [X] 850 Securities/Commodities/ |
| of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 380 Other Personal | **LABOR** | [ ] 861 HIA (1395ff) | Exchange |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle | Property Damage | [ ] 710 Fair Labor Standards | [ ] 862 Black Lung (923) | [ ] 875 Customer Challenge |
| [ ] 190 Other Contract | Product Liability | [ ] 385 Property Damage | Act | [ ] 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| [ ] 195 Contract Product Liability | [ ] 360 Other Personal | Product Liability | [ ] 720 Labor/Mgmt. Relations | [ ] 864 SSID Title XVI | [ ] 890 Other Statutory Actions |
| [ ] 196 Franchise | Injury | | [ ] 730 Labor/Mgmt.Reporting | [ ] 865 RSI (405(g)) | [ ] 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | & Disclosure Act | **FEDERAL TAX SUITS** | [ ] 892 Economic Stabilization Act |
| [ ] 210 Land Condemnation | [ ] 441 Voting | [ ] 510 Motions to Vacate | [ ] 740 Railway Labor Act | [ ] 870 Taxes (U.S. Plaintiff | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 442 Employment | Sentence | [ ] 790 Other Labor Litigation | or Defendant) | [ ] 894 Energy Allocation Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/ | **Habeas Corpus:** | [ ] 791 Empl. Ret. Inc. | [ ] 871 IRS—Third Party | [ ] 895 Freedom of Information |
| [ ] 240 Torts to Land | Accommodations | [ ] 530 General | Security Act | 26 USC 7609 | Act |
| [ ] 245 Tort Product Liability | [ ] 444 Welfare | [ ] 535 Death Penalty | | | [ ] 900Appeal of Fee Determination |
| [ ] 290 All Other Real Property | [ ] 445 Amer. w/Disabilities - | [ ] 540 Mandamus & Other | | | Under Equal Access |
| | Employment | [ ] 550 Civil Rights | | | to Justice |
| | [ ] 446 Amer. w/Disabilities - | [ ] 555 Prison Condition | | | [ ] 950 Constitutionality of |
| | Other | | | | State Statutes |
| | [ ] 440 Other Civil Rights | | | | |

## V.  ORIGIN    (Place an "X" in One Box Only)

- [X] 1  Original Proceeding
- [ ] 2  Removed from State Court
- [ ] 3  Remanded from Appellate Court
- [ ] 4  Reinstated or Reopened
- [ ] 5  Transferred from another district (specify)
- [ ] 6  Multidistrict Litigation
- [ ] 7  Appeal to District Judge from Magistrate Judgment

## VI.  CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
17(a) Securities Act [15 USC 77q(a)], Sec 10(b) Exchange Act [15 USC 78j(b)] [15USC 78j(b)]

Brief description of cause:

## VII.  REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
- DEMAND $
- CHECK YES only if demanded in complaint:
- JURY DEMAND:  [ ] Yes  [X] No

## VIII.  RELATED CASE(S) IF ANY

(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE  **3/6/07**   SIGNATURE OF ATTORNEY OF RECORD  *Kenneth J Guido*

FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# No Summons Issued

JS 44 Reverse (Rev. 11/04)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.**     **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

    **(b) County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

    **(c) Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**     **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.**     **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**     **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.**     **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.**     **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**          Example:    U.S. Civil Statute: <u>47 USC 553</u>
                           Brief Description: <u>Unauthorized reception of cable service</u>

**VII.**     **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**     **Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| **(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____ (EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____ (IN U.S. PLAINTIFF CASES ONLY) NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
| **(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

□ 1  U.S. Government Plaintiff
□ 3  Federal Question (U.S. Government Not a Party)

□ 2  U.S. Government Defendant
□ 4  Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | □ 1 | □ 1 | Incorporated or Principal Place of Business in This State | □ 4 | □ 4 |
| Citizen of Another State | □ 2 | □ 2 | Incorporated and Principal Place of Business in Another State | □ 5 | □ 5 |
| Citizen or Subject of a Foreign Country | □ 3 | □ 3 | Foreign Nation | □ 6 | □ 6 |

## IV.  CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**□ A. Antitrust**

□ 410 Antitrust

**□ B. Personal Injury/ Malpractice**

□ 310 Airplane
□ 315 Airplane Product Liability
□ 320 Assault, Libel & Slander
□ 330 Federal Employers Liability
□ 340 Marine
□ 345 Marine Product Liability
□ 350 Motor Vehicle
□ 355 Motor Vehicle Product Liability
□ 360 Other Personal Injury
□ 362 Medical Malpractice
□ 365 Product Liability
□ 368 Asbestos Product Liability

**□ C. Administrative Agency Review**

□ 151 Medicare Act

**Social Security:**
□ 861 HIA ((1395ff)
□ 862 Black Lung (923)
□ 863 DIWC/DIWW (405(g)
□ 864 SSID Title XVI
□ 865 RSI (405(g))

**Other Statutes**
□ 891 Agricultural Acts
□ 892 Economic Stabilization Act
□ 893 Environmental Matters
□ 894 Energy Allocation Act
□ 890 Other Statutory Actions (If Administrative Agency is Involved)

**☒ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

***(If Antitrust, then A governs)***

**□ E. General Civil (Other) OR □ F. Pro Se General Civil**

**Real Property**
□ 210 Land Condemnation
□ 220 Foreclosure
□ 230 Rent, Lease & Ejectment
□ 240 Torts to Land
□ 245 Tort Product Liability
□ 290 All Other Real Property

**Personal Property**
□ 370 Other Fraud
□ 371 Truth in Lending
□ 380 Other Personal Property Damage
□ 385 Property Damage Product Liability

**Bankruptcy**
□ 422 Appeal 28 USC 158
□ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
□ 535 Death Penalty
□ 540 Mandamus & Other
□ 550 Civil Rights
□ 555 Prison Condition

**Property Rights**
□ 820 Copyrights
□ 830 Patent
□ 840 Trademark

**Federal Tax Suits**
□ 870 Taxes (US plaintiff or defendant
□ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
□ 610 Agriculture
□ 620 Other Food &Drug
□ 625 Drug Related Seizure of Property 21 USC 881
□ 630 Liquor Laws
□ 640 RR & Truck
□ 650 Airline Regs
□ 660 Occupational Safety/Health
□ 690 Other

**Other Statutes**
□ 400 State Reapportionment
□ 430 Banks & Banking
□ 450 Commerce/ICC Rates/etc.
□ 460 Deportation

□ 470 Racketeer Influenced & Corrupt Organizations
□ 480 Consumer Credit
□ 490 Cable/Satellite TV
□ 810 Selective Service
□ 850 Securities/Commodities/ Exchange
□ 875 Customer Challenge 12 USC 3410
□ 900 Appeal of fee determination under equal access to Justice
□ 950 Constitutionality of State Statutes
□ 890 Other Statutory Actions (If not administrative agency review or Privacy Act