UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 07-0431 (RMU) |
| | : | | |
| v. | : | Re Document Nos.: | 39, 40 |
| | : | | |
| ONE OR MORE UNKNOWN TRADERS IN THE COMMON STOCK OF CERTAIN ISSUERS *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

**MEMORANDUM OPINION**

G<small>RANTING THE</small> P<small>LAINTIFF'S</small> M<small>OTION FOR</small> D<small>EFAULT</small> J<small>UDGMENT</small>
<small>AND FOR A</small> P<small>ERMANENT</small> I<small>NJUNCTION</small>

**I. INTRODUCTION**

This matter comes before the court on the plaintiff's motion for default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2). The plaintiff, the Securities and Exchange Commission ("SEC"), brings this action against four individuals who engaged in a "pump-and-dump" market manipulation scheme in violation of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a), the Securities and Exchange Act of 1933 ("Exchange Act"), 15 U.S.C. § 78j(b), and 17 C.F.R. § 240.10b5 ("Rule 10b-5"). The plaintiff served the defendants with a copy of the complaint on March 27, 2007, and to date the defendants have not responded to the complaint. Accordingly, the court grants the plaintiff's motion for a default judgment and permanent injunction.

## II. FACTUAL & PROCEDURAL BACKGROUND

The plaintiff commenced this action on March 6, 2007, alleging that between December 21, 2005, and December 4, 2006, the defendants, using a number of sub-accounts held at Pinnacle Capital Markets LLC ("Pinnacle") and titled in the name of relief defendant JSC Parex Bank ("Parex"), traded in the securities of issuers whose share prices were being manipulated through online intrusions and engaged in unauthorized trading in the online brokerage accounts of unsuspecting customers at U.S. broker-dealers. *See generally* Compl. On March 6, 2007, the court granted the plaintiff's motion to serve the defendants through Pinnacle and Parex. *See* Order (Mar. 6, 2007). In compliance with the court's order, the plaintiff served Parex with copies of the summons and complaint by sending copies of those documents via e-mail and Federal Express to Pinnacle's president, Michael A. Paciorek. Decl. of Att'y Kenneth J. Guido ("Guido Decl.") ¶ 6. On March 7, 2007, Paciorek forwarded the summons and complaint to Parex by electronic mail and Federal Express with instructions to serve the documents upon the defendants. *Id*. ¶ 7. Parex identified the defendants as Anna Gorelova, Oleg Kopylov, Sergey Kovalev and Dmitriy Philin and certified that on March 21, 2007, it served them with the summons and complaint. *Id.* ¶ 8; *see also id*., Ex. D.

On March 23, 2007, the court issued an order granting the plaintiff's unopposed motion for a preliminary injunction prohibiting the defendants from committing further violations of the Securities Act and the Exchange Act, freezing the defendants assets, providing for expedited discovery, preventing the destruction of evidence and ordering the defendants to provide an accounting for the transactions described in the complaint. *See generally* Order (Mar. 23, 2007). The court also concluded that it had subject matter jurisdiction over this action, personal jurisdiction over the defendants and that the defendants have been served with process. *Id*. at 2-3.

Because the defendants failed to appear, plead or otherwise defend themselves in this action, the Clerk of the Court entered default against those defendants on August 4, 2008. Clerk's Entry of Default (Aug. 4, 2008). The plaintiff filed this motion for a default judgment and permanent injunction on October 26, 2009. *See generally* Pl.'s Mot. Despite being served with a copy of this motion, the defendants have failed to respond.

## III. ANALYSIS

### A. Legal Standard for Entry of Default Judgment Under Rule 55(b)(2)

A court has the power to enter default judgment when a defendant fails to defend its case appropriately or otherwise engages in dilatory tactics. *Keegel v. Key W. & Caribbean Trading Co.*, 627 F.2d 372, 375 n.5 (D.C. Cir. 1980). Rule 55(a) of the Federal Rules of Civil Procedure provides for entry of default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules." FED. R. CIV. P. 55(a). Upon request of the party entitled to default, Rule 55(b)(2) authorizes the court to enter against the defendant a default judgment for the amount claimed and costs. *Id.* 55(b)(2).

Because courts strongly favor resolution of disputes on their merits, and because "it seems inherently unfair" to use the court's power to enter judgment as a penalty for filing delays, modern courts do not favor default judgments. *Jackson v. Beech*, 636 F.2d 831, 835 (D.C. Cir. 1980). Accordingly, default judgment usually is available "only when the adversary process has been halted because of an essentially unresponsive party . . . [as] the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights." *Id.* at 836 (quoting *H. F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970)).

Default establishes the defaulting party's liability for the well-pleaded allegations of the complaint. *Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001); *Avianca, Inc. v. Corriea*, 1992 WL 102999, at *1 (D.D.C. Apr. 13, 1992); *see also Brock v. Unique Racquetball & Health Clubs, Inc.*, 786 F.2d 61, 65 (2d Cir. 1986) (noting that "default concludes the liability phase of the trial"). Default does not, however, establish liability for the amount of damage that the plaintiff claims. *Shepherd v. Am. Broad. Cos., Inc.*, 862 F. Supp. 486, 491 (D.D.C. 1994), *vacated on other grounds*, 62 F.3d 1469 (D.C. Cir. 1995). Instead, "unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded." *Adkins*, 180 F. Supp. 2d at 17; *see also Credit Lyonnais Secs. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (stating that the court must conduct an inquiry to ascertain the amount of damages with reasonable certainty). The court has considerable latitude in determining the amount of damages. *Jones v. Winnepesaukee Realty*, 990 F.2d 1, 4 (1st Cir. 1993). To fix the amount, the court may conduct a hearing. FED. R. CIV. P. 55(b)(2). The court is not required to do so, however, "as long as it ensure[s] that there [is] a basis for the damages specified in the default judgment." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997).

### B. The Court Grants the Plaintiff's Motion for Entry of Default Judgment

#### 1. The Defendants are Liable to the Plaintiff

The plaintiff asserts that default judgment is appropriate because the defendants have been unresponsive throughout the adversarial process. Pl.'s Mot. at 6. Because the defendants failed to plead or otherwise defend themselves in this action, the Clerk of the Court entered default on August 4, 2008 pursuant to Federal Rule of Civil Procedure 55. *See* Clerk's Entry of Default (Aug. 4, 2008). Since that time, the defendants have not responded to either the initial

complaint or this motion, despite being served with copies of both. *See* Guido Decl., Ex. C. Given the defendants' failure to respond, the entry of default judgment is appropriate. *See, e.g., H.F. Livermore Corp.,* 432 F.2d at 691 (holding that default judgment is appropriate when "the adversary process has been halted because of an essentially unresponsive party").

The defendants' default constitutes an admission of liability for the well-pleaded allegations in the complaint. *Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co.*, 239 F. Supp. 2d 26, 30 (D.D.C. 2002); *see also Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994); *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 63 (2d Cir. 1971), *rev'd on other grounds*, 409 U.S. 363 (1973). The plaintiff alleges that the defendants participated in a trading scheme that violated § 17(a) of the Securities Act, § 10(b) of the Exchange Act and Rule 10b-5. *See generally* Compl. Accordingly, the court deems these well-pleaded allegations admitted, and must now determine the appropriate relief.

### 2. The Plaintiff Is Entitled to the Relief It Seeks

#### a. Disgorgement

The plaintiff seeks an order requiring the defendants to disgorge all illegal profits and pay prejudgment interest to the plaintiff. *See generally* Compl.; Pl.'s Mot. at 9. A district court has broad equitable power and discretion to order disgorgement of profits from illegal activities. *See Sec. & Exch. Comm'n v. Bilzerian*, 29 F.3d 689, 696 (D.C. Cir. 1994) (holding that disgorgement is remedial in nature and does not constitute a penalty); *Secs. & Exch. Comm'n v. First City Fin. Corp.*, 890 F.2d 1215, 1230 (D.C. Cir. 1989) (explaining that "[d]isgorgement is an equitable remedy designed to deprive a wrongdoer of his unjust enrichment and to deter others from violating the securities laws").

An evidentiary hearing is not necessary when "the amount claimed is a liquidated sum or one capable of mathematical calculation." *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993). The amount of disgorgement "need only be a reasonable approximation of profits causally connected to the violation." *First City Fin. Corp.*, 890 F.2d at 1231. If disgorgement calculations cannot be exact, the risk of uncertainty falls on the wrongdoer, whose illegal conduct created the uncertainty. *Sec. & Exch. Comm'n v. Lorin*, 76 F.3d 458, 462 (2d Cir. 1996).

The total ill-gotten profits realized by the defendants as a result of the unlawful scheme described in the complaint amounts to $784,724.11. Guido Decl. ¶ 16. Specifically, the plaintiff contends that Gorelova realized $57,278.56, Kovalev realized $368,378.16, Philin realized $134,917.33 and Kopylov realized $224,150.06 in illegal profits. *Id.* ¶¶ 92-95. All of the defendants' proceeds are allegedly held in an omnibus account titled in the name of Parex and held at Pinnacle's clearing firm, Penson Financial Services. *Id.* ¶ 96. The plaintiff calculated the defendants' illegal profits by identifying the specific stocks at issue, tracking the day or days on which the defendants traded in these stocks and the opening and closing prices of those stocks during the time it was traded by the defendants between December 2005 and December 2006. *Id*. ¶¶ 17-95. The plaintiff then took the number of stock shares at issue accumulated by the defendants at a given price and subtracted that from the number of stock shares sold by the defendants at the higher price artificially created by the defendants' illicit conduct. *Id*. Because the plaintiff calculated these figures by tracking the illegal trades made by the defendants between December 2005 and December 2006, *id.*, the amounts are sufficiently reasonable estimates of the illicit profits, *First City Fin. Corp.*, 890 F.2d at 1231 (determining that "disgorgement need only be a reasonable approximation of profits causally connected to the

violation . . . [and] courts typically require the violator to return all profits made on the illegal trades"). Accordingly, the court orders each defendant to disgorge the foregoing amounts.

### b. Prejudgment Interest

The plaintiff also seeks prejudgment interest on the disgorged profits through the date of the court's final judgment and requests that the court calculate the interest using the Internal Revenue Service ("IRS") underpayment rate. *See generally* Compl.; Pl.'s Mot. at 11. Assessing prejudgment interest on disgorgement enables the SEC to "recover the full amount of the defendants' unjust enrichment and to provide the possibility of complete compensation to the defrauded investors." *Secs. & Exch. Comm'n v. Levine*, 517 F. Supp. 2d 121, 141 (D.D.C. 2007). The prejudgment interest can be calculated by using the rate that the IRS employs for tax underpayment. *See* 26 U.S.C. § 6621(a)(2); *Secs. & Exch. Comm'n v. First Jersey Sec.*, 101 F.3d 1450, 1476 (2d Cir. 1996) (explaining that "[w]hen the SEC itself orders disgorgement . . . the interest rate it imposes is generally the IRS underpayment rate") (internal citations omitted); *see also Endico Potatoes v. CIT Group/Factoring*, 67 F.3d 1063, 1071-72 (2d Cir. 1995) (holding that "[t]he decision whether to grant prejudgment interest and the rate used if such interest is granted are matters confided to the district court's broad discretion") (internal quotations omitted). Accordingly, in addition to the award of disgorgement, the court orders the defendants to pay prejudgment interest through the date of the court's final judgment calculated using the IRS underpayment rate.[1]

### c. Civil Penalties

The plaintiff asks the court to impose the maximum third-tier civil penalty for each defendant. *See generally* Compl.; Pl.'s Mot. at 12. Section 20(d) of the Securities Act and §

---

[1] The IRS underpayment rate is determined on a quarterly basis and is the sum of the federal interest rate plus three percentage points. 26 U.S.C. § 6621.

21(d) of the Exchange Act set the standards for the imposition of civil monetary penalties. The two statutes are identical in establishing three tiers of penalties. *See generally* 15 U.S.C. §§ 77t(d)(2), 78u(d)(3). The purpose of a civil penalty is to punish the individual violator and deter future violations. *Secs. & Exch. Comm'n v. Kenton Capital, Ltd.*, 69 F. Supp. 2d 1, 17 (D.D.C. 1998). The statute provides that any civil penalty is to be determined by the court "in light of the facts and circumstances" of the particular case. 15 U.S.C. §§ 77t(d)(2)(A), 78u(d)(3)(B)(i). Third-tier penalties apply when a defendant's conduct "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement," and the violation "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." *Id*. §§ 77t(d)(2)(C), 78u(d)(3)(B)(iii). Under the third tier, the court may impose a penalty not to exceed the greater of $130,000[2] on an individual defendant for each violation or the gross amount of pecuniary gain to the defendant as a result of the violation. *Id.*

The defendants, by virtue of their default, have conceded the allegations against them. *See infra* Part III.B.1. The plaintiff alleges that the defendants intruded into the accounts of unsuspecting customers and placed unauthorized trades in their accounts, manipulating the stock prices of at least fifteen companies and reaping substantial profits. Pl.'s Mot. at 13. Taking these allegations as true, the fraudulent and manipulative nature of this scheme is sufficient to satisfy the first criterion for third-tier civil penalties. *See Sec. & Exch. Comm'n v. Aimsi Techs. Inc.*, 650 F. Supp. 2d 296, 307 (S.D.N.Y. 2009) (imposing third-tier penalties because the defendants engaged in a scheme to fraudulently inflate the price and trading volume of stock and sold it at the inflated prices); *Sec. & Exch. Comm'n v. CMKM Diamonds, Inc.*, 635 F. Supp. 2d 1185, 1192 (D. Nev. 2009) (imposing third-tier penalties because the defendants fraudulently

---

[2] The penalties enumerated in the statutes, *see* 15 U.S.C. §§ 77t(d)(2)(C), 78u(d)(3)(B)(iii) (noting a $100,000 third-tier penalty), are adjusted periodically for inflation, *see* 17 C.F.R. § 201.1003 (2010).

traded stock, conducted fraudulent transactions, manipulated stock and deceived the public); *Secs. & Exch. Comm'n v. McCaskey*, 2002 WL 850001, at *13 (S.D.N.Y. Mar. 26, 2002) (imposing third-tier penalties because the defendant manipulated stock to stabilize or artificially raise its price).

The defendants' alleged conduct also satisfies the second requirement for the imposition of third-tier civil penalties because their fraud created substantial losses or a significant risk of substantial losses to the victims whose accounts the defendants utilized, the broker-dealers who incurred financial damages in making their customers whole as well as the market participants who traded the securities that were manipulated by the defendants. *See Secs. & Exch. Comm'n v. World Info. Tech., Inc.*, 590 F. Supp. 2d 574, 578 (S.D.N.Y. 2008) (holding that the defendant's conduct, which induced investors to purchase $440,000 worth of valueless stock and yielded the defendant $117,500 in ill-gotten profits, created substantial losses or risk of substantial losses to the investors); *Secs. & Exch. Comm'n v. Tanner*, 2003 WL 21523978, at *2 (S.D.N.Y. July 3, 2003) (holding that the defendant's stock manipulation scheme, which yielded him $92,000 in ill-gotten profits, caused substantial losses or the risk of substantial losses to investors who purchased the inflated stock); *Secs. & Exch. Comm'n v. Bocchino*, 2002 WL 31528472, at *4 (S.D.N.Y. Nov. 8, 2002) (determining that the defendant's scheme to fraudulently inflate stock values, which yielded him $35,090 in ill-gotten profits and caused $808,875 in losses to investors sufficiently resulted in substantial losses or the risk of substantial losses to investors). Accordingly, the court grants the plaintiff's request to impose the following maximum third-tier penalties pursuant to section 20(d) of the Securities Act and section 21(d) of the Exchange Act: (1) as to Kovalev: $368,378.16, representing the amount of his pecuniary gain; (2) as to Philin: $134,917.33, representing the amount of his pecuniary gain; and (3) as to Kopylov: $224,150.06,

representing the amount of his pecuniary gain. With respect to Gorelova, the court imposes a penalty of $130,000, which amount represents the greater of $130,000 or Gorelova's pecuniary gain of $57,278.56.

### d. The Plaintiff is Entitled to Injunctive Relief

The plaintiff seeks a permanent injunction that

> permanently restrains and enjoins the trader defendants, and each of their agents, servants, employees, attorneys and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from future violations of Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5.

Compl., Prayer for Relief ¶ I.

The SEC is entitled to seek a permanent injunction for violations of the Securities Act and the Exchange Act. 15 U.S.C. §§ 77t(b), 78u(d)(1), 78u(e). The court has discretion to grant a permanent injunction when "there is a reasonable likelihood of further violation(s) in the future." *Secs. & Exch. Comm'n v. Savoy Indus., Inc.*, 587 F.2d 1149, 1168 (D.C. Cir. 1978). Determining the propensity for future violations requires examining the totality of the circumstances. *First City Fin. Corp.*, 890 F.2d at 1228. The relevant factors to consider are "whether a defendant's violation was isolated or part of a pattern, whether the violation was flagrant and deliberate or merely technical in nature, and whether the defendant's business will present opportunities to violate the law in the future." *Id.* The combination of the first two factors alone is sufficient to justify injunctive relief prohibiting future violations of the securities laws. *See Bilzerian*, 29 F.3d at 695 (determining that the defendant's pattern of flagrant conduct warranted an injunction); *Secs. & Exch. Comm'n v. Blatt*, 583 F.2d 1325, 1334-35 (5th Cir. 1978) (determining that the nature and extent of the securities violations warranted an

injunction); *Secs. & Exch. Comm'n v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 807 (2d Cir. 1975) (determining that the serious and intentional nature of defendant's conduct warranted an injunction).

In this case, the defendants engaged in illegal securities trading of at least fifteen companies over the course of approximately one year. Compl. ¶¶ 12-14. Furthermore, the defendants intruded into the online brokerage accounts of unsuspecting customers at U.S. broker-dealers, masking their identities through the use of hijacked Internet Protocol addresses. *Id*. ¶¶ 1-2. Given that the defendants' misconduct was not isolated and that the defendants acted deliberately in carrying out their unlawful trading scheme, there is a reasonable likelihood of future violations. *Bilzerian*, 29 F.3d at 695 (holding that the defendant's multiple, deliberate misrepresentations constituted a pattern warranting an injunction). Accordingly, the court grants the plaintiff's request for a permanent injunction.

## IV. CONCLUSION

For the foregoing reasons, the court grants the plaintiff's motion for default judgment and for a permanent injunction. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 31st day of August, 2010.

RICARDO M. URBINA
United States District Judge