UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SECURITIES AND<br>EXCHANGE COMMISSION, | : <br> : <br> : | |
| Plaintiff, | : <br> : | Civil Action No.: 07-0431 |
| v. | : <br> : | Re Document Nos.: 53, 59 |
| ONE OR MORE UNKNOWN<br>TRADERS IN THE COMMON STOCK<br>OF CERTAIN ISSUERS *et al.* | : <br> : <br> : <br> : | |
| Defendants. | : | |

### MEMORANDUM OPINION

GRANTING IN PART AND DENYING IN PART THE PLAINTIFF'S MOTION FOR DISGORGEMENT;
DENYING PAREX'S MOTION FOR SUMMARY JUDGMENT; GRANTING PAREX'S ALTERNATIVE
REQUEST TO UNFREEZE $1,164,652.07

### I. INTRODUCTION

This matter comes before the court on both the plaintiff's motion for disgorgement and the relief defendant[1], JSC Parex Bank, Inc.'s ("Parex"), motion for summary judgment. The defendants are four individuals who reaped substantial profits by engaging in illegal trading on the U.S. stock market. They carried out this illegal activity using Parex's brokerage account and stored the ill-gotten money at Parex. The court previously ordered Parex to freeze the brokerage account, which held $3,000,000.00, because it appeared to house the defendants' illegally obtained funds. The court also entered default judgment against the defendants and ordered restitution in the amount of $1,835,347.93.

---

[1] A relief defendant is a non-party in a case who likely possesses illegally obtained funds. *Fed. Trade Comm'n v. Cleverlink Trading Ltd.*, 519 F. Supp. 2d 784, 793 (N.D. Ill. 2007). Typically, no wrongdoing is alleged against a relief defendant. *Id.* A court can order disgorgement of the funds if the relief defendant received the funds and if it has no legitimate claim to them. *Id.*

The plaintiff, the Securities and Exchange Commission ("SEC"), has filed a motion to disgorge the frozen funds. In response, Parex moves to unfreeze the frozen funds or, in the alternative, asks that the court unfreeze the amount in the brokerage account in excess of the $1,835,347.93 that was ordered in restitution. Because the plaintiff does not sufficiently establish that the brokerage account funds are causally related to the defendants' wrongdoing, the court denies in part the plaintiff's motion for disgorgement. Further, because a genuine dispute of material fact exists as to this issue, the court denies in part Parex's motion for summary judgment. Because, however, the plaintiff demonstrates that the funds in a particular defendant's "current" account were indeed causally related to the wrongdoing, the court grants in part the plaintiff's motion. Finally, because the court previously determined that only $1,835,347.93 was subject to restitution, the court grants Parex's alternative request to unfreeze the funds in the frozen brokerage account that exceed the restitution amount.

## II.   FACTUAL & PROCEDURAL BACKGROUND

In 2002, Parex, a bank located in Latvia, established a brokerage account in the United States to allow its customers to buy and sell shares of stock on the U.S. stock market. Rel. Def.'s Statement of Undisputed Material Facts in Supp. of Summ. J. ("Rel. Def.'s Statement") ¶ 14. Parex established this brokerage account by contracting with Penson Financial Services, Inc. ("Penson"), a private financial company. *Id.* Parex claims that the brokerage account included, *inter alia*, a communal "omnibus" account maintained for the benefit of all of its customers who traded in U.S. securities. *Id.* Pl.'s Statement of Genuine Issues of Fact in Opp'n to Summ. J. ("Pl.'s Statement") ¶ 5. In addition, Parex states, each of its investors had his or her own separate "current account" that was located in Latvia. Rel. Def.'s Statement ¶ 14.

Parex claims that an investor would use the brokerage account as a platform to make trades on the U.S. stock market. *Id.* at 15. Parex would deposit any resulting proceeds into the omnibus account within the brokerage account. *Id.* According to Parex, these funds would then be sent[2] to the investor's respective "current" account in Latvia. *Id.*

Between December 2005 and December 2006, the defendants used the brokerage account to purchase and sell shares of common stock on the U.S. stock market. *Id.* ¶¶ 2, 15, 18. Utilizing "a modern-day, technological version of the traditional 'pump-and-dump' market manipulation scheme," the defendants illegally inflated stock prices for their personal gain. *Id.* ¶ 3. To carry out this scheme, the defendants first purchased stocks in thinly traded[3] companies at very low prices. *Id*. The defendants then hacked into the accounts of third-party investors and bought shares in these thinly traded companies in order to increase the appearance of trading activity and thereby artificially inflate their stock prices. *Id*. Once the stock prices were significantly inflated, the defendants sold all of their personal shares in the companies for substantial monetary gains. *Id*.

According to Parex, the illegally obtained assets were "credited" to the defendants' respective "current" accounts in Latvia. Rel. Def.'s Mot., Ex. B, Mem. of P. & A. in Supp. of Opp'n to Pl.'s Mot. and Rel. Def.'s Cross-Mot. for Summ. J.[4] ("Rel. Def.'s Mem.") at 6. Parex

---

[2] Parex has not clarified who was responsible for allegedly transferring the illegal funds to the defendants' respective current accounts.

[3] "Thinly traded" stocks are shares of small, relatively unknown publically traded companies. *United States v. Hughes*, 505 F.3d 578, 583 (6th Cir. 2007). Such stocks often have a limited number of interested buyers and sellers. *Id.* Prices of thinly traded securities thus tend to be more volatile than those traded more actively because just a few trades can affect the market price substantially. *Id.*

[4] Parex has labeled this memorandum as part of its motion. For clarity, the court has relabeled this document as "Exhibit B."

claims that it closed those current accounts due to the defendants' suspicious activities well before the plaintiff filed this action. *Id.* at 7-8.

In March 2007, the plaintiff brought this suit against the defendants, alleging that their actions violated § 17(a) of the Securities Act, § 10(b) of the Exchange Act and SEC Rule 10b-5, codified at 17 C.F.R. § 240.10b-5. *See generally* Compl. The plaintiff then filed a preliminary injunction to enjoin the illegal activity and Parex was named as a relief defendant because it allegedly held the ill-gotten funds.[5] *See generally* Pl's Mot. for Prelim. Inj. The court granted the injunction and entered a consent order for Parex to freeze $3,000,000.00 held in the omnibus account. Order (Mar. 6, 2007) at 3. The defendants did not respond to any of the allegations and neglected to engage in the proceedings. *See generally* Mem. Op. (Aug. 31, 2010). Eventually, the court entered default judgment against each of the defendants and ordered them to collectively pay $1,835,347.93 in restitution. *Id.*

Because the defendants have yet to pay any of the judgment ordered against them, the plaintiff has now filed a motion requesting that the relief defendant turn the frozen funds over to the SEC to satisfy the restitution order. *See* Pl.'s Mot. for Order Directing Rel. Def. JSC Parex Bank to Turnover Frozen Funds ("Pl.'s Mot."). In response, Parex has filed a motion for summary judgment, contending that the funds in the brokerage account are not subject to disgorgement. Rel. Def.'s Mem. at 6. The court now turns to the parties' arguments and the relevant legal standard.

---

[5] Parex has not been accused of any wrongdoing, including any participation in or knowledge of the illegal activity. *See generally* Compl.

### III.  ANALYSIS

### A.  Legal Standard for Summary Judgment

Summary judgment is appropriate when the pleadings and evidence show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  To determine which facts are "material," a court must look to the substantive law on which each claim rests.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A "genuine dispute" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action.  *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true.  *Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position.  *Id.* at 252.  To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment.  *Id.*

The nonmoving party may defeat summary judgment through factual representations made in a sworn affidavit if he "support[s] his allegations . . . with facts in the record," *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (quoting *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993)), or provides "direct testimonial evidence," *Arrington v. United States*, 473 F.3d 329, 338

(D.C. Cir. 2006). Indeed, for the court to accept anything less "would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial." *Greene*, 164 F.3d at 675.

### B. Legal Standard for Disgorgement of Ill-Gotten Funds

Disgorgement is appropriate under the court's equitable powers to deprive wrongdoers of unjust enrichment and to deter others from violating securities laws. *Sec. and Exch. Comm'n v. Banner Fund Int'l*, 211 F.3d 602, 617 (D.C. Cir. 2000); *Sec. and Exch. Comm'n v. First City Fin. Corp., Ltd.,* 890 F.2d 1215, 1231 (D.C. Cir. 1989). A disgorgement order is not a punitive measure but is instead "intended to prevent unjust enrichment. *Banner*, 211 F.3d at 617; *First City*, 890 F.2d at 1230.

A court may order disgorgement only as to "property causally related to the wrongdoing." *First City*, 890 F.2d at 1231. The plaintiff bears the burden of showing the causal relationship between the wrongdoing and the illegally obtained funds. *Id*. Disgorgement, however, need only be a reasonable approximation of profits causally connected to the violation. *Id*. A defendant may legitimately avoid an order of disgorgement by establishing a clear break or considerable attenuation in the causal connection between the wrongdoing and the illegally obtained funds. *Id.* at 1232.

If the illegal funds are causally related to the wrongdoing, the court may order a relief defendant to disgorge assets if it has received ill-gotten funds and does not have a legitimate claim to such funds. *Sec. and Exch. Comm'n v. Cavanagh*, 155 F.3d 129, 136 (2d Cir. 1998); *Sec. and Exch. Comm'n v. Whittemore*, 659 F.3d 1, 9-10 (D.C. Cir. 2011) (affirming the district court's determination that disgorgement was proper in cases that met the two factors of the

*Cavanagh* test). When ill-gotten gains are comingled with legitimately obtained assets, the entire pool of money is subject to disgorgement. *Banner*, 211 F.3d at 617; *Sec. and Exch. Comm'n v. Rosenthal*, 426 F. App'x 1, 1-2 (2d Cir. 2011).

### C. The Court Grants in Part and Denies in Part the Parties' Respective Motions

The plaintiff argues that Parex should disgorge all of the frozen funds in its omnibus account, which total $3,000,000.00, because these funds are causally related to the defendants' illegal activity. Pl.'s Mot. at 3. More specifically, the plaintiff asserts that the omnibus account facilitated the defendants' pump-and-dump scheme. Pl.'s Opp'n at 8. According to the plaintiff, the defendants' illegal trading proceeds were placed in Parex's omnibus account and have remained there since the court ordered the account frozen. *Id.* Disgorgement is therefore proper, the plaintiff asserts, because Parex received the illegal funds and has no legitimate claim to them. *Id.* In addition, the plaintiff avers that even if the ill-gotten funds were comingled with legitimately obtained monies in the omnibus account, the entire pool of funds is subject to disgorgement because it would deter future defendants from dispersing illegally obtained profits to avoid disgorgement. *Id.*

Parex asserts that the omnibus account is not subject to disgorgement because the omnibus account did not contain the ill-gotten funds at the time of the court-ordered freeze. Rel. Def.'s Mem. at 16. According to Parex, all of the illegal trading profits were sent to the defendants' respective "current" accounts in Latvia. *Id.* Parex claims that the defendants withdrew almost all of these illegal monies before Parex closed the accounts for suspicious activity and the plaintiff brought this action. *Id.* In the alternative, Parex argues that even if the court determines that disgorgement is proper, only the $1,835,347.93 that the court ordered in

restitution should be disgorged, and the court should unfreeze the remaining $1,164,652.07 in the omnibus account. *Id*. at 19.

In its reply, the plaintiff maintains that Parex remained in possession of the illegal funds at the time of the court-ordered freeze. Pl.'s Mot. at 11. The plaintiff observes that Parex's agreement with its U.S. counterpart, Penson, indicated that the brokerage account would be the only account used for all trading-related activities. Pl.'s Opp'n at 6. Additionally, the plaintiff argues that Parex has provided no proof that the illegal money ever actually left the omnibus account. *Id*. at 9. Similarly, the plaintiff contends that even if the illegal profits were transferred from the omnibus account to the defendants' respective "current" accounts, Parex offers no evidence that the defendants withdrew the monies from those accounts. *Id.* at 9.

As mentioned previously, a court may order disgorgement only as to property that is causally related to the wrongdoing. *First City*, 890 F.2d at 1231. If the plaintiff cannot establish that this causal relationship exists, disgorgement is improper. *Id.* As a threshold matter, the court already determined that the proceeds from the defendants' activities are causally related to their wrongdoing when it entered an order of restitution. Order (Mar. 14, 2007) at 4. The parties' dispute, however, lies in whether the frozen funds in Parex's omnibus account are indeed those illegal funds, or in other words, whether the funds in the omnibus account are causally related to the defendants' wrongdoing. *See* Pl.'s Mot. at 8-10; Rel. Def.'s Mot. at 15-18.

Parex maintains that disgorgement is inappropriate because the ill-gotten funds were not present in Parex's accounts at the time of the court-ordered freeze. Rel. Def.'s Mot. at 15. According to Parex, the illegal proceeds were sent from the omnibus account to the defendants' respective "current" accounts, at which point the defendants successfully withdrew the majority of the illegal funds. *Id.* at 16. Parex claims that it was only after this that it became suspicious

8

and closed the "current" accounts altogether. *Id.* Parex offers financial records and affidavits from bank personnel to support these claims. *See generally* Rel. Def.'s Reply, Exs. B, C, D. Specifically, Parex puts forward affidavits from bank personnel that state that the illegal proceeds were sent to the "current" accounts. Rel. Def.'s Reply, Ex. B at 11; Ex. C at 5. In addition, the affidavits indicate that Parex closed these accounts prior to the court-ordered freeze. Rel. Def.'s Reply, Ex. B at 12; Ex. C at 6. Further, Parex provides statements of the defendants' respective "current" accounts before they were closed, two of which reflect a near-zero balance.[6] Rel. Def.'s Reply, Ex. D at 11, 19, 25. A reasonable juror could therefore conclude from such evidence that Parex did not possess all of the ill-gotten funds at the time of the court-ordered freeze.

Some of Parex's financial records and the plaintiff's affidavits, however, raise doubt as to whether the illegal funds ever left the omnibus account. The SEC's fraud personnel affirm that there are no documents reflecting that any funds were sent to the "current" accounts, or that any funds ever left the omnibus account at all. Pl.'s Mot., Ex. A at 1-2; Ex. B at 3. Indeed, the plaintiffs note, the financial statements for the "current" accounts indicate that there were transfers made to the brokerage account, instead of from it. *See generally* Rel. Def.'s Reply, Ex. C. In addition, the SEC fraud personnel testify that Parex has failed to provide any financial records pertaining to the omnibus account, save the sole 2011 record indicating that the omnibus account currently contains the frozen $3,000,000.00. Pl.'s Mot., Ex. A at 2. The absence of such evidence may cause a reasonable juror to question whether the illegal funds ever left the omnibus account. *Westfall v. Erwin*, 484 U.S. 292, 292-93 (1988) (determining that if there is an absence

---

[6] One of the "current" accounts contained $6.99 at the time that it was closed. Rel. Def.'s Reply, Ex. D at 11. Another contained $13.58 at that time. *Id.* at 19.

9

of evidence from the moving party, there is a genuine issue of material fact and summary judgment is denied).

In reviewing the aforementioned evidence, the court concludes that reasonable jurors could disagree as to whether the illegal proceeds were found in the omnibus account at the time of the court-ordered freeze. Therefore, reasonable jurors could disagree as to whether the frozen funds in the account were causally connected to the defendants' wrongdoing. Because the plaintiff has not established that the funds in the omnibus account are causally connected to the defendants' wrongdoing, the court denies in part the plaintiff's motion for disgorgement. *Sec. and Exch. Comm'n v. Pallais*, 2010 WL 2772329, at *7 (S.D.N.Y. July 9, 2010) (denying the plaintiff's motion for disgorgement because of its failure to establish a causal connection to the wrongdoing); *Sec. and Exch. Comm'n v. Conaway*, 2009 WL 902063, at *19 (E.D. Mich. Mar. 31, 2009) (determining that uncertainty as to whether the disputed funds are causally connected to the wrongdoing precludes disgorgement). Similarly, because a genuine dispute of material fact exists as to whether the funds in the account are causally connected to the defendants' wrongdoing, the court denies in part Parex's motion for summary judgment. *Conaway*, 2009 WL 902063, at *19 (determining that uncertainty about whether the disputed funds are subject to disgorgement creates a genuine issue of material fact as to their causal connection to the wrongdoing); *Sec. and Exch. Comm'n v. Vassallo*, 2009 WL 4895323, at *1 (E.D. Cal. Dec. 11, 2009) (holding that because there was a disputed issue of fact concerning disgorgement, summary judgment was denied and the disgorgement determination would only be made after an evidentiary hearing).

The court grants summary judgment to the plaintiff, however, with respect to the $159,169.55 that remains in one defendant's "current" account. *See* Rel. Def.'s Mot. at 19.

Parex concedes that these funds consist of proceeds from the illegal activity and are thus subject to disgorgement. *Id.* Because Parex admits that it received such funds and that it has no legitimate claims to them, the court grants in part the plaintiff's motion for disgorgement as to these funds. *See e.g.*, *Sec. and Exch. Comm'n v. Colello*, 139 F.3d 674, 676 (9th Cir. 1998) (determining that when an entity possesses ill-gotten funds but does not have a legitimate claim to them, disgorgement is proper in order to facilitate recovery).

Finally, the court considers Parex's request, in the alternative, to unfreeze the amount in the brokerage account in excess of the ordered restitution. The court previously determined that $1,835,347.93 was causally related to the defendants' wrongdoing and is therefore subject to disgorgement. Mem. Op. (Aug. 31, 2010) at 5. As noted earlier, however, the frozen funds in the omnibus account total $3,000,000.00. *See* Order (Mar. 6, 2007) at 3. Because the plaintiff has not attempted to show that the excess $1,164,652.07 in the brokerage account is causally related to the wrongdoing, Parex's motion for summary judgment is granted in part and the court orders that this excess amount be unfrozen. *First City*, 890 F.2d at 1232 (holding that profits derived outside of the illegal activity are not subject to disgorgement if the defendant shows a clear break or a considerable attenuation between the illegal activity and the funds in question); *Rosenthal*, 426 F. App'x at 1-2 ("The district court has broad discretion not only in determining whether or not to order disgorgement but also in calculating the amount to be disgorged.") (internal citations omitted).

## IV. CONCLUSION

For the foregoing reasons, the court grants in part and denies in part the plaintiff's motion for disgorgement and grants in part and denies in part Parex's motion for summary judgment.

11

An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 28th day of March, 2012.

                                                                           RICARDO M. URBINA
                                                               United States District Judge